UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,  Case No. 3:22-cr-511

    Plaintiff,

v.  MEMORANDUM OPINION
AND ORDER

Darnell Triplett,

    Defendant.

## I. INTRODUCTION

Defendant Darnell Triplett has been charged with one count of conspiracy to possess with the intent to distribute controlled substances, in violation of 21 U.S.C. § 846; one count of illegally possessing a firearm after having been convicted of a felony, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); and two counts of use of a communications facility to facilitate a drug felony, in violation of 21 U.S.C. § 843(b). (Doc. No. 1). While representing himself with appointed stand-by counsel, (*see* non-document entry dated March 22, 2023), Triplett filed three motions to suppress: (1) a motion to suppress evidence seized during a warrantless search of Triplett's vehicle during a traffic stop, (Doc. No. 149); (2) a motion to suppress evidence obtained pursuant to a search warrant for his residence, (Doc. No. 150); and (3) a motion to suppress evidence obtained pursuant to a Title III wiretap warrant. (Doc. No. 151). The government filed a brief in opposition to all three motions. (Doc. No. 172). Triplett filed a brief in reply, in which he also requests an evidentiary hearing. (Doc. No. 192).

Shortly before filing his reply brief, Triplett requested new counsel. Stand-by counsel was permitted to withdraw and new counsel was appointed. (*See* non-document order dated October 3, 2023). Triplett, through newly appointed counsel, filed a motion to hold his pending motion in abeyance while counsel determined if supplementation was appropriate. (Doc. No. 195). I granted the motion and granted Triplett leave to supplement. (*See* non-document orders dated November 15, 2023, and January 22, 2024). I also struck Triplett's *pro se* reply brief from the record, because it was filed after new counsel was appointed to represent him. (*See* Doc. No. 192). Triplett then filed a supplemental motion to suppress evidence from the traffic stop and renewed his request for an evidentiary hearing. (Doc. No. 231).

For the reasons stated below, I deny Triplett's request for a hearing and his motions.

## II.  BACKGROUND

On September 11, 2020, Delaware County, Ohio Sheriff's Deputy Brandon Hunter observed a Dodge Charger driving at least 10 miles per hour under the posted speed limit on Interstate 71. *State v. Triplett*, 2022-Ohio-1371, 2022 WL 1211124, at *1 (Ohio Ct. App. April 22, 2022). Deputy Hunter ran the vehicle's license plate and determined it was expired. *Id.* He then conducted a traffic stop on the vehicle due to the expired registration and after observing the vehicle changing lanes too closely to another vehicle. *Id.*

Deputy Hunter approached the vehicle and found Triplett in the driver's seat, as well as two female passengers. *Id.* Triplett told Deputy Hunter the vehicle was a rental vehicle but was unable to produce a rental agreement. *Id.* After confirming the vehicle's registration had expired, Deputy Hunter became "concerned . . . the Charger may be overdue to be returned to the rental company or stolen." *Id.* at *2.

> Deputy Hunter also explained that this was the first time he had ever seen a rental car with an expired registration. . . . Dep. Hunter also noted that the Charger appeared "lived in" as it was strewn with dust and debris throughout the interior. . . . He stated that there was also a strong odor of car air freshener. . . . The deputy also

2

> noted that despite there only being three occupants, there appeared to be five cellphones in the Charger. . . . The deputy testified that in his experience, "longer term" rentals are often used in drug smuggling to avoid having personal vehicles seized or personal information available by running license plates. . . .
>
> Dep. Hunter aired Appellant's identifiers to dispatch and learned that Appellant had an "armed and dangerous" caution due to a prior conviction, and that he was subject to a protection order.

*Id.*

Another deputy who arrived to assist with the traffic stop instructed the two female passengers to exit the Charger so that Deputy Hunter's K9 partner could sniff the vehicle. *Id.* When they did so, the deputy observed marijuana in the front passenger door. The deputies then conducted a search of the Charger and found three kilos of cocaine concealed within the vehicle. *Id.* Triplett subsequently was indicted by a Delaware County grand jury on one count of possession of cocaine and one count of trafficking in cocaine. *Id.* at *1.

On May 5, 2021, Triplett was charged by indictment by a federal grand jury with one count of illegally possessing a firearm after having been convicted of a felony, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (the "2021 Case"). (Case No. 3:21-cr-342, Doc. No. 7). Triplett's appointed attorney subsequently sought and obtained leave to file a motion to suppress. (*Id.*, non-document orders dated July 30, 2021, and August 23, 2021). One week before the deadline for filing that motion, the government moved to dismiss the indictment pursuant to Federal Rule of Criminal Procedure 48(a). (*Id.*, Doc. Nos. 10 and 10-1). I granted the motion and dismissed the indictment without prejudice on September 7, 2021. (*Id.*, Doc. No. 11).

Meanwhile, on May 13, 2021, Triplett stood trial in the Delaware County, Court of Common Pleas on the state drug trafficking charges. *See Triplett*, 2022 WL 1211124 at *3. A jury convicted Triplett on both counts and he was sentenced to a mandatory term of 11 to 16.5 years in prison. *Id.* While there was a warrant issued to transfer Triplett to the custody of the Ohio Department of

3

Rehabilitation and Correction following the conclusion of the 2021 case, (*see* Doc. No. 130-4), he was mistakenly released from custody after the dismissal of that case.

At some point, Triplett left town. Delaware County learned Triplett was not in state or federal custody approximately a year later and issued a warrant for his arrest on August 17, 2022. (Doc. No. 130-5). A few weeks later, on September 7, 2022, Triplett and nine co-defendants were charged by indictment in this case. Triplett then was located and arrested in Alabama. (*See* non-document entry dated September 15, 2022); (Doc. No. 79). He remained in custody in Alabama until he was able to be transported to Ohio, where he was arraigned on January 4, 2023. (Doc. No. 79-1); (*see* non-document entry dated January 4, 2023). Triplett is charged with conspiracy to possess with intent to distribute controlled substances, in violation of 21 U.S.C. § 846, and two counts of use of a communications facility to facilitate a drug felony, in violation of 21 U.S.C. § 843(b). (Doc. No. 1 at 1-3, 7-8).

### III.  ANALYSIS

As I noted above, Triplett moves to suppress evidence seized during the traffic stop, pursuant to a search warrant, and pursuant to a Title III wiretap warrant. He also seeks a hearing with respect to each motion. Triplett's arguments are not persuasive, and he is not entitled to a hearing.

#### A.  MOTION TO SUPPRESS – TRAFFIC STOP

Triplett first claims all evidence from the September 11, 2020 traffic stop should be suppressed because Deputy Hunter did not have an appropriate basis to stop his vehicle. (Doc. No. 149 at 1). He also asserts officers unreasonably prolonged the traffic stop to conduct the K9 search and requests an evidentiary hearing. (*Id.* at 2-3). The government asserts I should deny this motion on the basis of collateral estoppel. (Doc. No. 172 at 1-3).

A defendant is entitled to an evidentiary hearing on a motion to suppress "only if the motion is sufficiently definite, specific, detailed, and non-conjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question." *United States v. Ickes*, 922 F.3d 708, 710 (6th Cir. 2019) (quoting *United States v. Abboud*, 438 F.3d 554, 577 (6th Cir. 2006)). A hearing is not required if there are no "issues of fact material to the resolution of the defendant's constitutional claim." *United States v. Voigt*, 89 F.3d 1050, 1067 (3d Cir. 1996).

I conclude the doctrine of collateral estoppel bars Triplett's motion to suppress evidence seized from his vehicle and therefore there are no material issues of fact to be resolved at a hearing.

The Full Faith and Credit Act provides that state court judicial proceedings "shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." 28 U.S.C. § 1738. Thus, a federal court "must normally give a . . . state court judgment 'the same preclusive effect as would be given that judgment under the law of the State.'" *United States v. Dominguez*, 359 F.3d 839, 541 (6th Cir. 2004) (quoting *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)).

Under Ohio law, the doctrine of collateral estoppel (also known as issue preclusion) "applies when the fact or issue (1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom collateral estoppel is asserted was a party in privity with a party to the prior action." *Thompson v. Wing*, 637 N.E.2d 917, 923 (Ohio 1994) (citation omitted).

As the United States Court of Appeals for the Sixth Circuit has recognized, "state and federal prosecutions involve different parties" because the federal government and a state government are different sovereigns. *United States v. Willis*, 981 F.3d 511, 515 (6th Cir. 2020). Ohio generally insists upon mutuality of estoppel, that is, that both parties in the subsequent litigation be

5

the same as the parties in the prior action.  *See, e.g., Goodson v. McDonough Power Equip.*, 443 N.E.2d 978, 981-82 (Ohio 1983).  But the Supreme Court of Ohio has held a "proper" exception to the mutuality requirement exists "where it [is] shown that the party defendant clearly had his day in court on the specific issue brought into litigation within the later proceeding."  *Id.* at 985 (citing *Hicks v. De La Cruz*, 369 N.E.2d 776, 777-78 (Ohio 1977)).

This exception applies here.  Triplett filed a motion to suppress in state court.  The trial court denied the motion, concluding the "traffic offense of following too closely justified the stop, and that there was no evidence of an unreasonably prolonged stop."  *Triplett*, 2022 WL 1211124 at *2.  After he was convicted at trial, Triplett appealed the denial of his suppression motion.  The Court of Appeals for the Fifth District of Ohio affirmed, concluding Triplett had not established his Fourth Amendment rights had been violated because there was "reasonable and articulable suspicion to stop [Triplett's] vehicle" and that the "duration of the stop was not unreasonable."  *Id.* at *5-6.  Thus, Triplett actually and directly litigated this issue before a court of competent jurisdiction, which rejected his arguments.  *See Thompson*, 637 N.E.2d at 923.

Triplett argues collateral estoppel should not apply because he did not have a full and fair opportunity to litigate the issue and because the issue has not actually reached a final judgment.[1]  (Doc. No. 192 at 2-4).  Neither argument is persuasive.

First, Triplett does not point to any limitation on his ability to litigate his suppression motion in state court.  Instead, he merely claims the state courts got it wrong.  (*See* Doc. No. 192 at 2 ("The trial court erred in finding requisite reasonable suspicion of criminal activity exited for continued delay of the traffic stop."); *id.* at 4 ("The court[']s judgment was contrary to well established law.")).

---

[1]  I previously ordered that Triplett's *pro se* reply brief be stricken from the record, because it was filed after counsel was appointed to represent him and therefore violated the prohibition against dual representation.  But I conclude that, out of fairness to Triplett, it is appropriate for me to consider his collateral estoppel arguments, which are not contained elsewhere in the record.

Triplett's disagreement with the state courts' decisions falls far short of establishing he did not actually and directly litigate the issue in the prior proceedings.

Next, Triplett asserts this issue was not "actually tried and decided." (*Id.* at 4). In support, he points to "a case number (#2-23cv02619), which is a case filed in the United States District Courts." (*Id.*). That case number does not correspond to any case in this court, and Triplett provides no other information about where it might have been filed. More importantly, he entirely fails to explain how a civil case filing might undermine the finality of the state courts' rejection of his suppress motion.

The doctrine of "collateral estoppel not only reduce[s] unnecessary litigation and foster[s] reliance on adjudication, but also promote[s] the comity between state and federal courts that has been recognized as a bulwark of the federal system." *Allen v. McCurry*, 449 U.S. 90, 95-96 (1980). I conclude Ohio courts would give preclusive effect to the resolution of Triplett's suppression motion during his state court criminal proceedings and that § 1738 mandates that I do the same. Therefore, I conclude the doctrine of collateral estoppel bars Triplett's attempt to relitigate this issue and deny his motion to suppress on this basis.

### B. MOTION TO SUPPRESS – SEARCH WARRANT

Triplett moves to suppress a firearm recovered during a search of a duplex on Harding Drive in Toledo where Triplett resided. (Doc. No. 150). Triplett contends the search warrant affidavit failed to establish a nexus between a drug trafficking conspiracy being investigated by the FBI and the Harding Drive duplex and implies that any evidence of drug trafficking at that location was stale by the time agents applied for a search warrant 34 days later. (*Id.* at 3-4). He also alleges the government engaged in impropriety by applying for the warrant to a Magistrate Judge located in the Eastern Division of the Northern District of Ohio. (*Id.* at 3). Finally, Triplett requests a *Franks* hearing. (*Id.* at 4).

7

The Fourth Amendment generally requires law enforcement officers to obtain a warrant, based upon probable cause, before searching a location in which an individual has a reasonable expectation of privacy. *See, e.g., Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2018) ("When an individual 'seeks to preserve something as private,' and his expectation of privacy is 'one that society is prepared to recognize as reasonable,' we have held that official intrusion into that private sphere generally qualifies as a search and requires a warrant supported by probable cause.") (further citation omitted). Probable cause is the "reasonable grounds for belief" that evidence of a crime may be found in a certain place or location. *United Stated v. Lattner*, 385 F.3d 947, 951 (6th Cir. 2004) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)). "Probable cause exists when there is a 'fair probability,' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United States v. Loggins*, 777 F.2d 336, 338 (6th Cir. 1985) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

The principles underlying a court's probable cause review are familiar. The Fourth Amendment requires only that "the magistrate had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing." *Gates*, 462 U.S. at 236 (citation omitted) (alteration in original). An affidavit "should be reviewed in a commonsense – rather than a hypertechnical – manner, and the court should consider whether the totality of the circumstances supports a finding of probable cause, rather than engaging in line-by-line scrutiny." *United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004).

A defendant seeking to suppress evidence based only upon alleged deficiencies in a warrant affidavit is entitled to a *Franks* hearing if the defendant makes "a substantial showing that the affidavit in support of the warrant at issue included a false statement, made knowingly or intentionally, or with reckless disregard for the truth" and that the false or misleading statements were material to the probable cause determination. *United States v. Cruz*, 715 F. App'x 454, 456 (6th

8

Cir. 2017) (citing *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)). Triplett has not identified any false or misleading statements in the search warrant affidavit and, therefore, he is not entitled to a *Franks* hearing.

The Sixth Circuit has held that "[a]lthough a defendant's status as a drug dealer, standing alone, does not give rise to a fair probability that drugs will be found in [the] defendant's home, . . . [the defendant's] status as a drug dealer plus observation of drug activity near [the] defendant's home is sufficient to establish probable cause to search the home." *United States v. Berry*, 565 F.3d 332, 339 (6th Cir. 2009) (citations omitted).

As the search warrant affidavit indicated, Triplett has numerous convictions for drug trafficking and drug possession. (Doc. No. 173 at 31-32) (filed under seal). On March 24, 2021, Derrick Murphy[2] called Triplett on speaker phone while in a car with a confidential informant who was wearing a digital recorder which transmitted audio in real time to investigators. (*Id.* at 10-11). During the call, Murphy and Triplett discussed a drug transaction and agreed that Murphy would provide heroin or fentanyl to a woman who then would meet someone driving Triplett's car. (*Id.*). Investigators conducting surveillance observed a woman meet another woman who was driving Triplett's car. The second woman then drove to the Harding Drive duplex, where she met Triplett in the alley behind the residence. Investigators knew Triplett resided at the Harding Drive duplex because Triplett was on electronic monitoring while on pretrial release awaiting his felony drug trafficking trial in Delaware County. (*Id.*).

This information alone establishes a nexus between Triplett's residence and the drug trafficking conspiracy and probable cause to believe evidence of a crime would be found at that location. *See Berry*, 565 F.3d at 339. But the search warrant affidavit also contained additional

---

[2] Murphy is named in the indictment in this case, (Doc. No. 1 at 2), though he was indicted on charges of conspiracy and distribution of controlled substances in a separate case. (*United States v. Murphy*, Case No. 3:21-cr-335, Doc. No. 24).

9

information drawn from subsequent telephone conversations between Triplett and Murphy, in which Triplett told Murphy the fentanyl was not selling fast enough and asking Murphy to obtain cocaine for Triplett instead. (*See, e.g.,* Doc. No. 173 at 11-12, 15-16, and 18-19). These subsequent, ongoing conversations provide a reasonable basis to believe that evidence of drug trafficking would be found at the Harding Drive duplex. Taken as a whole, the search warrant affidavit provided the magistrate judge with "substantial basis for . . . conclud[ing] that a search would uncover evidence of wrongdoing." *Gates*, 462 U.S. at 236 (citations and internal quotation marks omitted).

Further, the fact that investigators obtained the search warrant from a magistrate judge located in the Eastern Division of the Northern District of Ohio has no impact on the validity of the search warrant. Fed. R. Crim. P. 41(b)(1) ("At the request of a federal law enforcement officer . . . . a magistrate judge with authority in the district . . . has authority to issue a warrant to search for and seize a person or property located within the district."). Therefore, I deny Triplett's motion to suppress. (Doc. No. 150).

### C. MOTION TO SUPPRESS – TITLE III WARRANT

Finally, Triplett moves to suppress evidence obtained pursuant to a Title III wiretap warrant (the "T-III"). Triplett contends the government was required to obtain a separate court order permitting the use of evidence obtained through the T-III because Murphy was the focus of the investigation in which the T-III was granted but Murphy was not named in the indictment in this case. (Doc. No. 151 at 2).

This argument is not persuasive. While the Sixth Circuit does not appear to have addressed this issue, other federal courts, including the Supreme Court, have held that federal law does not prevent the use of intercepted communications as evidence against a defendant in criminal proceedings where that defendant is not named in a T-III application. *See, e.g., United States v. Donovan*, 429 U.S. 413, 427 n.15 (1977) ("It is not a constitutional requirement that all those likely to

10

be overheard engaging in incriminating conversations be named."); *United States v. Hyde*, 574 F.2d 856, 862 (5th Cir. 1978) ("[W]e have never required that a defendant be named in a wiretap application or accused of using the suspected telephone before evidence obtained by the wiretap can be used against him."); *United States v. Urban*, 404 F.3d 754, 773 (3d Cir. 2005) (Title III does not "proscribe[] the interception and use of audio or visual data of persons not specifically named in an application seeking judicial authorization of such interception.").

And as the government notes, Triplett himself was named in the T-III. (Doc. No. 173-1) (filed under seal). Triplett offers no legal basis for his contention that the government was required to obtain a separate court order before it could prosecute him. And neither of the cases he cites, (Doc. No. 151 at 2), requires that all individuals named in a T-III be charged in the same indictment.

I conclude Triplett fails to carry his burden to show the evidence obtained pursuant to the T-III must be suppressed and deny his motion.

## IV. CONCLUSION

For the reasons set forth above, I deny Triplett's request for a hearing and his motions to suppress. (Doc. Nos. 149, 150, 151, and 231).

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge